# United States Court of Appeals,

## For the Fifth Circuit

No. 95-50533

**United States of America**

Plaintiff-Appellee

**VERSUS**

**Kevin GRAY, Gary THOMAS, and Troy DRUMMOND**

Defendants-Appellants

**Appeal from the United States District Court
for the Western District of Texas**

**September 18, 1996**

Before DUHÉ, DENNIS, Circuit Judges, and DUVAL,[1] District Judge.

DUVAL, District Judge:

### PROCEDURAL BACKGROUND

By grand jury indictment, Appellants Kevin Gray (hereinafter "Gray"), Gary Thomas (hereinafter "Thomas") and Troy Drummond (hereinafter "Drummond") (hereinafter collectively "appellants") and others were charged with conspiracy to commit mail and wire fraud, and with various counts of mail and wire fraud in violation

---

[1] District Judge of the Eastern District of Louisiana, sitting by designation.

of 18 U.S.C. §§ 2, 371[2], 1341[3], 1343[4] and 1346[5]. All three were convicted of the conspiracy charge; Gray was convicted of two counts of wire fraud (Counts 13 & 14); Thomas was convicted of three counts of wire fraud (Counts 6, 7, & 8); and Drummond was convicted of four counts (Counts 2, 3, 4, & 5). Each filed timely motions for judgment of acquittal which were denied by the District Court. Each was sentenced to three years of probation and 50 hours community service; Thomas received a $1500 fine while Gray and Drummond received a $1000 fine. Each now appeals.

Specifically, Gray, Thomas and Drummond challenge the

---

[2]    18 U.S.C. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

[3]    18 U.S.C. § 1341, in pertinent part, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service...or knowingly causes [such matter or thing] to be delivered by mail...shall be fined under this title or imprisoned not more than five years, or both....

[4]    18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representation, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this titled or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more that $1,000,000 or imprisoned not more that 30 years, or both.

[5]    18 U.S.C. § 1346 provides:

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

sufficiency of the evidence supporting their conspiracy, mail fraud and wire fraud convictions. All argue that the scheme was merely a breach of fiduciary duty but not mail or wire fraud. Appellants, Gray and Thomas also challenge portions of the jury charges read to the jury. Furthermore, Gray and Thomas contend that § 1346 is unconstitutionally vague as it is applied to them.

### FACTUAL BACKGROUND

The indictment charged members of the mens' basketball coaching staff at Baylor University, and others, with executing a fraudulent scheme to establish academic eligibility for five transfer students to play basketball at Baylor during the 1993-94 academic year. In its simplest terms, the coaches helped the five players, recruited from two-year colleges, to obtain the credits required for eligibility and possibly scholarships by providing these students with written course work or answers to correspondence exams, which were then sent to the sponsoring schools as the students' work.[6]

Gray and Thomas were assistant mens' basketball coaches in 1993. Drummond was an assistant basketball coach at Westark Community College in Ft. Smith, Arkansas in early, 1993.

---

[6] The following scenario is an illustrative example of appellants' scheme:

> A McLennan Community College student, Shannon Brantley, who lacked approximately 22 hours toward a degree, enrolled in a correspondence program at Southeastern Assemblies of God. The evidence at trial indicated that Gray completed Brantley's final exam in Earth Science and that appellant, Drummond, provided Brantley with the answers to the final exam in Algebra. The successful completion of these two courses enabled Brantley to enroll at Baylor. This scheme, however, was unbeknownst to Southeastern Assemblies of God and Baylor at the time Brantley received his degree and transferred to Baylor and began playing basketball in the fall of 1993.

Thereafter, in August, 1993, Drummond was hired by Baylor as the "restricted earnings coach."

Baylor University was a member of the Southwest Conference and Division 1A of the NCAA. The NCAA regulations fix academic eligibility requirements for student athletes transferring from two-year colleges to four-year Division 1A schools like Baylor. Failure to comply with the NCAA's rules could result in the imposition of sanctions.

Five students were focused upon during the trial of this matter. Those students were Jerome Lambert, Marcus Thompson, Shannon Brantley, Jason Ervin and Tyrone Davis. The specific facts surrounding the coaches efforts on behalf of these students is not disputed and thus, not germane to the legal analysis.

## ANALYSIS

I

The defendants contend that insufficient evidence supports their convictions for conspiracy, mail fraud and wire fraud. It is fundamental that we, as an appellate court, owe great deference to a jury verdict. Therefore, in assessing a challenge to the sufficiency of the evidence, we will consider the evidence in the light most favorable to the verdict and will afford the government the benefit of all reasonable inferences and credibility choices. United States v. Walters, 87 F.3d 663, 667 (5th Cir. 1996) (citing United States v. Ayala, 887 F.2d 62, 67 (5th Cir.1989)). The evidence is sufficient if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt

4

based upon the evidence presented at trial. <u>Walters</u>, 87 F.3d at 667.

To prove conspiracy pursuant to 18 U.S.C. § 371, the government must prove: (1) an agreement between two or more persons, (2) to commit a crime, and (3) an overt act committed by one of the conspirators in furtherance of the agreement. <u>United States v. Mackay</u>, 33 F.3d 489 (5th Cir. 1994). That statute further requires the government to prove that a conspiracy existed, that the defendant knew of the conspiracy and that he knowingly and voluntarily joined it. <u>Id.</u>

To prove mail fraud pursuant to 18 U.S.C. § 1341, the government must prove: (1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme. <u>United States v. Nguyen</u>, 28 F.3d 477, 481 (5th Cir. 1994); <u>United States v. Pazos</u>, 24 F.3d 660, 665 (5th Cir. 1994).

To prove wire fraud pursuant to 18 U.S.C. § 1343, the government must prove (1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme. <u>United States v. Loney</u>, 959 F.2d 1332, 1337 (5th Cir. 1992).

The indictment alleged and the jury was charged that Gray, Thomas and Drummond could have committed fraud under either of two theories: (1) they deprived victims of property, and (2) they deprived victims of the right to honest services. The victims of the scheme alleged in the indictment included Baylor, Westark Community College and others.

5

Gray, Thomas and Drummond make a number of arguments in support of their contention that sufficient evidence does not support their convictions for conspiracy, mail fraud and wire fraud. They argue first that the mail and wire fraud statutes do not encompass the type of property deprivation at issue, i.e. scholarships and degrees, in this case relying on United States v. Walters, 997 F.2d 1219 (7th Cir. 1993). Second, Gray, Thomas and Drummond advance the argument that the government seeks to criminalize mere deceit alleging that they lacked the intent to either harm the victims or to obtain personal benefit relying on United States v. Ballard, 663 F.2d 534 (5th Cir. 1981), modified, 680 F.2d 352 (5th Cir. 1982, Unit B).[7] We address these separately.

A

Gray, Thomas and Drummond first argue that the mail and wire fraud statutes do not encompass the type of property deprivation at issue in this case. Specifically, appellants urge that the granting of scholarships and degrees was simply an incidental property loss not amounting to fraud relying on Walters, 997 F.2d 1219 (7th Cir. 1993). This challenge lacks merit.

---

[7] Appellants also rely on United States v. Lemire, 720 F.2d 1327 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984) (failure to disclose conflict of interest not sufficient to maintain conviction based on breach of fiduciary duty), United States v. Starr, 816 F.2d 94 (2d Cir. 1987) (mail fraud conviction reversed where alleged victims got exactly what they bargained for and did not feel cheated); United States v. Regent Office Supply, 421 F.2d 1174 (2d Cir. 1970) (reversed mail fraud convictions holding that mere proof of false statement was not criminal violation); United States v. Schwartz, 924 F.2d 410 (2d Cir. 1991); United States v. Lew, 875 F.2d 1327 (D.C. Cir. 1983) (conviction reversed because no evidence that Lew made false representations to alleged victims but instead to others), cert. denied, 467 U.S. 1226 (1984).

Walters, an agent, signed 58 college football players to contracts while they were still playing pursuant to the NCAA rules. These contracts violated NCAA rules. Id. at 1221. After completing college, many of these players reneged on their agreements with Walters. Id. Thereafter, Walters and others were indicted for mail fraud. The fraud alleged: causing the universities to pay scholarship funds to athletes who had become ineligible as a result of the agency contracts. After finding that the "scheme or artifice to defraud" clause and the "obtaining money or property" clause of 18 U.S.C. § 1343 contemplate a transfer of some kind, the court reversed the convictions holding that losses that occur only as byproducts of a deceitful scheme do not satisfy the statutory requirement. Id. at 1225.

Walters is distinguishable from the instant case. Indeed, the conduct in Walters occurred prior to the enactment of 18 U.S.C. § 1346.[8] Thus, Walters holding that 18 U.S.C. § 1343 contemplates "a transfer of some kind" is inapplicable to the acts alleged in the instant case since they occurred after the enactment of 18 U.S.C. § 1346.

As with any question of statutory meaning, we begin with the language of the statute. Brumley, 79 F.3d at 1434-35 (citing

---

[8] In 1988, Congress enacted § 1346 allegedly attempting to override the Supreme Court's decision in McNally v. United States, 107 S. Ct. 2875 (1987). McNally held that the mail fraud statute did not criminalize schemes to defraud citizens of their rights to honest government. Id. at 2881. Congress' purpose in enacting § 1346 as expressed by Representative Conyers and the Senate Judiciary Committee and cited, though not favorably, by this circuit in United States v. Brumley, 79 F.3d 1430 (5th Cir. 1996) was to restore the mail fraud statute to its pre-McNally position by allowing mail fraud convictions to be predicated on deprivations of honest services. See United States v. Martinez, 905 F.2d 709, 715 (3d Cir. 1990).

Kellogg v. United States, (In re West Texas Marketing Corp.), 54 F.3d 1194, 1200 (5th Cir.), cert. denied, ___ U.S. __, 116 S. Ct. 523, 133 L.Ed.2d 430 (1995)).  In determining a statute's plain meaning, we assume that absent any contrary definition, "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."  Brumley, 79 F.3d at 1435 (citing Pioneer Investment Services v. Brunswick Associates, 507 U.S. 380, 388, 113 S. Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (internal quotation marks omitted)).  As the Supreme Court has stated: "There is, of course, no more persuasive evidence of the purpose of a statute that the words by which the legislature undertook to give expression to its wishes."  Id. (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S. Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted)).

The statute in question, 18 U.S.C. § 1343, in pertinent part, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses... for the purpose of executing such scheme or artifice, shall be fined under this titled or imprisoned not more than five years, or both....

Nothing in the term "scheme or artifice to defraud" mandates "a transfer of some kind"  as defined in 18 U.S.C. § 1346 which states that:

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

Therefore, Walters holding that 18 U.S.C. § 1343 contemplates a "transfer of some kind" is inapplicable to situations occurring

8

after the enactment of 18 U.S.C. § 1346. Indeed, it is uncontested that appellants actions occurred after the enactment of 18 U.S.C. § 1346. Further, it is clear that appellants devised and executed a scheme to deprive Baylor of its intangible right of the honest services of its employees. Accordingly, appellants reliance on Walters is misplaced.

B

Gray, Thomas and Drummond next argue that these convictions improperly criminalize mere deceit because they lacked the requisite intent to either harm the victims or to obtain personal benefit relying on Ballard. Appellants properly look to pre-McNally precedent, Ballard, in deciding this case alleging mail and wire fraud. However, appellants misconstrue the Ballard decision.

Essentially, appellants argue that their scheme was not intended to harm Baylor but rather to help Baylor by ensuring a successful basketball team.

This argument lacks merit in light of the "honest services amendment" to the mail and wire fraud statutes, 18 U.S.C. § 1346, which allows the government to predicate a fraud prosecution on a "scheme or artifice to deprive another of the intangible right of honest services." In Ballard, a pre-McNally case, this Court held

> that a breach of fiduciary duty of honesty or loyalty involving a violation of the duty to disclose could only result in criminal mail fraud where the information withheld from the employer was material and that, where the employer was in the private sector, information should be deemed material if the employee had reason to believe the information would lead a reasonable employer to change its business conduct.

Ballard, 680 F.2d at 353.

9

In Ballard, several people were prosecuted for conspiracy and mail fraud based on a "daisy-chain" scheme to sell oil to the Florida Power Company ("FPC") through a chain of buyers and sellers, each of whom took the maximum profits authorized by law. Granlund, a consultant under contract with FPC, masterminded the scheme and received a commission on each sale. The defendants were all convicted of mail fraud charges predicated on an alleged scheme to deprive certain oil companies of the employees' honest and faithful services.

This Court found that "a breach of fiduciary duty can constitute illegal fraud ... only when there is some detriment to the employer." Ballard, 663 F.2d at 540. This Court went on to find that the detriment can be a deprivation of an employee's faithful and honest services if a violation of the employee's duty to disclose material information is involved. Thus, the Court focused its inquiry on the duty to disclose and materiality. Materiality exists whenever "an employee has reason to believe the information would lead a reasonable employer to change its business conduct." Id.

In reversing certain of the convictions, this Court found that the withheld information, i.e. the daisy-chain scheme and Granlund's profits, was not material because the employer-oil companies were receiving the maximum profit allowed by law. In affirming Granlund's conviction, however, the Court found that Granlund's failure to disclose the scheme and his profits to FPC was material as FPC might have been able to purchase the oil at a

10

lower price.  Thus, Granlund's failure to disclose was material and thus, his actions were within the scope of the mail fraud statute.

In the instant case, the information withheld, i.e. the "coaches' cheating scheme", was material because Baylor did not get the quality student it expected.  Further, appellants failure to disclose the scheme to Baylor was material as Baylor might have been able to recruit other qualified, eligible students to play basketball.  Instead, once the scheme was suspected, Baylor was forced to institute a costly investigation and the players under suspicion were withheld from competition.  It is quite reasonable to believe that Baylor would have changed its business conduct had it known of the "cheating scheme."  Accordingly, appellants challenge lacks merit.

## II

Gray and Thomas further contend that portions of the jury instructions were erroneous.  We review objected to instructions for abuse of discretion and will reverse a conviction only if the instructions fail to correctly state the law.  United States v. Coleman, 997 F.2d 1101, 1105 (5th Cir. 1993); United States v. Townsend, 31 F.3d 262, 270 (5th Cir. 1994), cert. denied, 115 S. Ct. 773 (1995).  On the other hand, we review unobjected-to jury instructions for plain error.  Fed.R.Crim.P. 52(b); see also United States v. Ramirez, 810 F.2d 1338, 1344 (5th Cir. 1987).  Plain error is that error "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice.

11

Ramirez, 810 F.2d at 1344 (citations omitted).  Appellants challenges to the jury charges lack merit.

Over objection, the district court submitted an instruction to the jury which stated that "[w]here an employee breaches a duty to his employer by concealing material information which he has a duty to disclose and where such non-disclosure may result in harm to the employer, the act constitutes a scheme to defraud within the purview of the statute...."  This definition of materiality of nondisclosed information given by the Court substantially tracks the language of Ballard and thus, correctly states the law. Accordingly, appellants challenge lacks merit.

The unobjected-to instruction at issue states:

> An employee assisting ineligible students to obtain scholarships from his employer may constitute a scheme to defraud within the scope of the mail fraud and wire fraud statutes, if that is done with the requisite intent to defraud.

Gray and Thomas contend that this charge improperly "singled out" one part of the government's case, i.e., deprivation of property, and, thus, is not sufficient to sustain a mail fraud conviction in light of the trial court's statements during sentencing.  Indeed, the trial judge stated that

> the convictions can only stand as convictions of the scheme or artifice of depriving Baylor of the defendants' honest services, and any losses suffered by Baylor are not relevant to the application of the sentencing guidelines....

The government, however, correctly points out that the indictment alleges that the scheme charged included an intent to defraud Baylor of property in the form of scholarships in addition to charging a scheme or artifice to defraud of honest services.

12

Thus, the trial judge's statements during sentencing cannot restrict the indictment and the evidence adduced at trial.

Further, the charge at issue does not improperly "single out" one portion of the government's case. Indeed, the charge, in pertinent part, actually states that

> An employee assisting ineligible students to obtain scholarships from his employer may constitute a scheme to defraud within the scope of the mail fraud and wire fraud statutes, if that is done with the requisite intent to defraud.

> Now the object of a fraudulent scheme need not be the deprivation of a tangible interest. Artifices designed to deprive another of the right of honest services also may violate the statute.

Thus, the unobjected-to charge, when read in context, clearly states that the object of the scheme can either be tangible property or the intangible right to honest services. Because we find that 18 U.S.C. § 1346 is constitutional[9] and we find sufficient evidence supporting appellants' convictions, this charge does not constitute plain error.[10]

### III

Gray and Thomas next contend that 18 U.S.C. § 1346 is unconstitutionally vague as applied to them in this case. Specifically, Gray and Thomas argue that the term "honest services"

---

[9]    See Part III.

[10]    However, even if the charge did "single out" property deprivation, the evidence adduced at trial indicated that Baylor's successful basketball team would enure to the coaches benefit. Indeed, Drummond actually received a coaching position at Baylor as a result of his recruiting efforts. Further, even if appellants intended no personal, tangible benefit, "intent to defraud" is defined in the charge, in pertinent part, as "caus[ing] some loss to some person." Clearly, appellants scheme to defraud caused a loss to Baylor. Accordingly, the unobjected-to charge does not constitute plain error.

13

gives too much discretion to law enforcement. The "void-for-vagueness" doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. <u>Posters 'N' Things, LTD. v. U.S.</u>, 114 S. Ct. 1747, 1754 (1994) (citations omitted). The Supreme Court has repeatedly held, however, that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975); <u>see</u> <u>also</u> <u>Chapman v. United States</u>, 500 U.S. 453, 467 (1991).

The constitutionality of 18 U.S.C. § 1346 has been addressed by at least two circuits. In <u>United States v. Waymer</u>, 55 F.3d 564 (11th Cir. 1995), the Eleventh Circuit held that the statute was not vague or overly broad. In so holding, the Court found that the requirement that the defendant act willfully and with a specific intent to defraud provided the necessary specificity for limited prosecutions. The Court further stated that if the evidence proved the requisite intent then the statute was relieved of the objection that the prosecutor had unlimited discretion. <u>Id.</u> at 568.

The statute was also upheld in <u>United States v. Bryan</u>, 58 F.3d 933 (4th Cir. 1995). The <u>Bryan</u> court noted that this type of vagueness challenge was generally rejected in pre-<u>McNally</u> cases. <u>Id.</u> at 941, n. 3.

Evaluating 18 U.S.C. § 1346 in light of the instant case, Gray and Thomas clearly acted willfully and with the intent to defraud

14

Baylor of their honest services.  Indeed, Gray and Thomas completed a qualifying test for off-campus recruiting certifying their knowledge and compliance with the NCAA rules.  Further, the testimony at trial indicated that a coach was required to notify Baylor officials of any rule violation.  We conclude therefore that Gray and Thomas fail to demonstrate that 18 U.S.C. § 1346 is unconstitutionally vague as applied to them.

IV

For the reasons we have stated in this opinion, the defendants' convictions and sentences are AFFIRMED.