**UNITED STATES of America,**
**Plaintiff,**

v.

**Thomas K. WELCH and David**
**R. Johnson, Defendants.**

No. 2:00–CR–0324–S.

United States District Court,
D. Utah,
Central Division.

Nov. 15, 2001.

address defendants' remaining arguments di-     rected towards those counts.

Richard N. Wiedis, U.S. Department of Justice, Salt Lake City, UT, John W. Scott, Richard A. Friedman, U.S. Department of Justice, Washington, DC, for Plaintiff.

William W. Taylor III, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, Max D. Wheeler, Snow, Christensen & Martineau, Salt Lake City, UT, Michael Goldsmith, Park City, UT, for Defendants.

MEMORANDUM OPINION AND OR-
DER ADDRESSING DEFEN-
DANTS' MOTION TO DISMISS
COUNT 1, COUNTS 6–10 AND
COUNTS 11–15 OF THE INDICT-
MENT

SAM, Senior District Judge.

## I. INTRODUCTION

The court, having carefully considered the arguments of counsel and being fully informed of the relevant law, issues the following memorandum opinion and order with respect to defendants' motion to dismiss count 1, counts 6 through 10, and counts 11 through 15 of the indictment, charging conspiracy, mail fraud and wire fraud respectively.

Defendants Thomas K. Welch and David R. Johnson served as President and Senior Vice President, respectively, of the Salt Lake City Bid Committee for the Olympic Winter Games ("SLBC") and its successor organization, the Salt Lake Organizing Committee for the 2002 Olympic Winter Games ("SLOC"). SLBC was organized to seek the right from the International Olympic Committee ("IOC") to host the Olympic Winter Games in Utah. SLOC was formed to facilitate hosting the 2002 Olympic Winter Games after Salt Lake City was elected as host city in 1995.

On July 20, 2000, defendants were charged in a 15 count indictment with con-spiracy, in violation of 18 U.S.C. § 371, violations of the Travel Act, 18 U.S.C. § 1952, and mail, wire and honest services fraud, in violation of 18 U.S.C. §§ 1341, 1343 and 1346, allegedly arising from their efforts to win and host the Olympic Winter Games. Defendants subsequently moved to dismiss all counts of the indictment for failure to state an offense.

On June 8, 2001, the magistrate judge issued a Report and Recommendation ("R & R") to the court recommending that defendants' motion to dismiss the Travel Act counts, counts 2 through 5, be denied.[1] The court rejected that recommendation and, in an order dated July 16, 2001, granted defendants' motion to dismiss with respect to the Travel Act counts. The court's memorandum opinion detailing its reasons for dismissing the Travel Act counts was issued on August 9, 2001.

On June 27, 2001, the magistrate judge issued his R & R recommending that de-fendants' motion to dismiss the mail and wire fraud counts, counts 6 through 15, be denied. On July 10, 2001, defendants ob-jected to that R & R. The court addresses *de novo* defendants' motion to dismiss the conspiracy, mail fraud and wire fraud counts.

## II. MOTION TO DISMISS STANDARD

Rule 12(b) of the Federal Rules of Crim-inal Procedure allows for consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue." Defendants raise the defense of a defective indictment. *See* Fed.R.Crim.P. 12(b)(2).

An indictment is sufficient to withstand a motion to dismiss "if it (1)

---

1. Pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's order, the case was referred to the magistrate judge. The magistrate judge ad-dressed defendants' motion to dismiss in two separate R & Rs. The June 8, 2001 R & R related to the Travel Act counts only. The June 27, 2001 R & R addressed defendants' motion to dismiss the mail and wire fraud charges.

contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994). In considering a motion to dismiss, the "indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.*

## III. DISCUSSION

### A. DISMISSAL OF THE TRAVEL ACT CHARGES REQUIRES DISMISSAL OF THE MAIL AND WIRE FRAUD CHARGES AND THE CONSPIRACY CHARGE.

█ Defendants assert that the court cannot conclude confidently that the grand jury would have indicted them for conspiracy, mail and wire fraud without the allegations of illegal bribery encompassed in the Travel Act counts, which the court has since dismissed.[2] Defendants' position is that the conspiracy, mail and wire fraud charges, which essentially allege that defendants bribed IOC members

and concealed it from their employer, are defective because the grand jury may have erroneously assumed defendants' conduct was unlawful under Utah's commercial bribery statute.[3]

The government, on the other hand, urges that, as a result of the court's dismissal of the Travel Act charges, "a phrase of a few words could be excised from Paragraph 21 of Count 1 and the rest of the allegations of the Mail and Wire Fraud charges, including those incorporated by reference, could remain completely intact, as could the substance of those charges." (Resp. to Objection to R & R at 9).

The court concludes that even though Utah's commercial bribery statute was recited in the indictment for purposes of the Travel Act charges, its inclusion may have influenced the grand jury's decision to indict defendants on the conspiracy, mail and wire fraud charges. Bribery allegations, or allegations reasonably implying bribery, permeate the entire indictment. The wording of the indictment and the government's own comments reflect that the remaining conspiracy, wire and mail fraud charges are based on the presumption that defendants bribed IOC members unlawfully to award Salt Lake City the Olympic games.[4] The payments and benefits defendants allegedly provided IOC members in violation of Utah's commercial

2. Because the magistrate judge recommended that defendants' motion to dismiss the Travel Act counts should be denied, he did not reach this portion of defendants' motion.

3. In its previous opinion addressing defendants' motion to dismiss the Travel Act counts, the court ruled that Utah's commercial bribery statute, Utah Code § 76–6–508, was not an appropriate Travel Act predicate and that, as applied to defendants, it was unconstitutionally vague and ambiguous.

4. For example, the government, referring to the indictment as a whole, has stated:

    The charges are based on the corrupt scheme orchestrated by the defendants to

make unlawful payments to members of the International Olympic Committee (IOC) so they would vote to select Salt Lake City as the host of the Olympic Winter Games.... The approximately $1 million dollars worth of payments which flowed from the coffers of the SLBC ... were an unmistakable effort to "buy" the IOC members' votes: what any layman would understand as attempted bribery.

(Opp'n to Mot. Dismiss at 1).

The government has characterized the object of the charged conspiracy as "to unlawfully give money and other benefits to IOC members in order to influence them to vote for Salt Lake City as the host of the Olympic Winter Games." (*Id.* at 50).

bribery statute under the Travel Act counts are the identical payments that underlie the fraud and conspiracy counts. The court cannot determine what influence, if any, the inclusion of the defective Travel Act charges with their reliance on Utah's commercial bribery statute may have had on the grand jury's decision to indict defendants for conspiracy, mail and wire fraud. Consequently, those remaining counts must be dismissed. *See United States v. D'Alessio*, 822 F.Supp. 1134 (D.N.J.1993) (court dismissed indictment because it could not ascertain whether presentation to the grand jury of a law inapplicable to the defendant influenced the grand jury's decision to indict on other charges).[5]

The government's suggestion that the remaining counts of the indictment may be preserved by striking "a few words" which reference Utah's commercial bribery statute as the predicate offense for the Travel Act counts must be rejected. The court may "strike from an indictment allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests, provided nothing is thereby added to the indictment." *United States v. Sullivan*, 919 F.2d 1403, 1436 (10th Cir.1990). However, "[t]he Fifth Amendment grand jury clause permits substantive amendment of an indictment only by resubmission to the grand jury." *Id.*[6] " '[A]n amendment involves a change, whether literal or in effect, in the

---

5. The *D'Alessio* court concluded that, because a rule prohibiting the solicitation and receipt of personal gifts did not clearly apply to county sheriffs, such as the defendant, it was an inappropriate basis for those charges in the indictment that referred to and relied upon it. Those charges, consequently, were dismissed.

> The wording of the indictment and the Government's explanation of it indicate that the intangible rights portion of the mail fraud charges is centrally based on the presumption that D'Alessio as a sheriff could not solicit or accept personal gifts.... While striking all references to [the gratuity law] might yield an indictment which successfully charges an intangible rights fraud scheme, the question is whether it would charge the same intangible rights scheme returned by the grand jury.... The court rules that it would not. The grand jury may have indicted the defendants on the sole premise that the mere solicitation of private gifts was prohibited. Reliance on that premise may have tainted all of their charges. Without it, the grand jury may not have indicted the defendants at all or differently. The court should not and will not speculate as to what the grand jury would have done; nor will it amend or alter what it has done.

*D'Alessio*, 822 F.Supp. at 1144–45 (citation omitted). The court further ruled that, because the improper inclusion of the subject gratuity law may also have influenced the grand jury to indict on other charges, those

charges must also be dismissed. The court reasoned as follows:

> The court simply cannot determine whether and to what extent the inclusion of [the gratuity law] in counts one through three (and the impression that it created that D'Alessio had a duty not to solicit gifts) led the grand jury to indict on the charges that D'Alessio knowingly, willfully and unlawfully devised a scheme to defraud the contributors to his ... fundraiser of money and property .... Because there is a distinct and reasonable possibility that the inclusion of [the gratuity law] in counts one through three infected both prongs of the indictment's alleged mail fraud scheme, the court must dismiss these counts in their entirety.

*Id.* at 1145–1146.

6. The reason why the court may not substantively amend an indictment has been stated as follows:

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed."

terms of the indictment.' " *United States v. Moore,* 198 F.3d 793, 795 (10th Cir.1999) (quoting *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978)). *See also, United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir.1984) (citation omitted) (an actual amendment "occurs when the charging terms of an indictment are altered ... by the prosecutor or a court after the grand jury has last passed upon them").

The court concludes that to cure the indictment by amendment would change the terms of the indictment substantively and, therefore, is not permitted. The court previously ruled that inclusion of alleged violations of Utah's commercial bribery statute in connection with the Travel Act charges was improper. An analysis of the conspiracy, mail and wire fraud charges indicates that the fraud scheme charged by the grand jury relies heavily on allegations that defendants bribed IOC members unlawfully in order to win the Olympic Winter Games. Review of the indictment reflects inflammatory allegations of bribery in violation of Utah law, unlawful bribery, misappropriation of money and like characterizations. Those allegations are so prevalent and interrelated in the remaining counts that they cannot be segregated and stricken without so altering those charges as to constitute an improper amendment of the indictment. Count 1 of the indictment charges conspiracy in violation of 18 U.S.C. § 371. It is alleged in part that defendants conspired to violate the Travel Act with the intent "to promote, manage, establish, carry on and facilitate ... unlawful activity, to wit: bribery in violation of Title 76, Utah Criminal Code, Section 76–6–508." (Indictment at p. 6, ¶ 19(a)). The alleged object of the conspiracy was "to misappropriate and misapply the monies and funds of the SLBC/SLOC by diverting SLBC income, and by giving, offering and agreeing to give money and other material personal benefits to influence IOC members to vote for Salt Lake City to host the Olympic Winter Games" and to conceal it from SLBC/SLOC and others. (*Id.* at p. 8, ¶ 20). The alleged manner and means of the conspiracy is described as defendants depriving SLBC/SLOC of its money "by using such monies and funds for unauthorized purposes, by committing acts of bribery in violation of the laws of the State of Utah." (*Id.* at ¶ 21). It is further alleged that defendants recruited IOC members and conferred benefits upon them to influence their selection of a host city for the 2002 Olympic Winter Games, (*Id.* at ¶ 22), and that defendants as part of the conspiracy made payments of money and benefits to specified IOC members. (*Id.* at p. 9, ¶ 23). Those benefits are described elsewhere as unlawful bribes. It is alleged that defendants concealed from SLBC/SLOC and others many of the benefits conferred. (*Id.* at p. 10, ¶ 24). It is alleged that defendants recruited and secretly paid a USOC official to assist SLBC to defeat competing U.S. and foreign potential host cities. (*Id.* at p. 11, ¶¶ 26, 27, 28). The alleged overt acts of defendants in furtherance of the conspiracy generally reflect benefits allegedly conferred to influence IOC members to vote for Salt Lake City to host the 2002 Winter Olympics. (*See id.* at pp. 12–29, ¶¶ 30(1)-(98)).

Counts 2 through 5 of the indictment charge violation of the Travel Act, 18 U.S.C. § 1952, and allege in essence that defendants bribed or intended to bribe various IOC members in violation of Utah's commercial bribery statute. Those counts were dismissed by the court on July 16, 2001.

*Russell v. United States,* 369 U.S. 749, 770–771, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (quoting *Ex Parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887)); *see also United States v. Miller,* 471 U.S. 130, 142–143, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

Counts 6 through 10 of the indictment allege mail fraud and honest services fraud in violation of 18 U.S.C. §§ 1341, 1346.[7] An essential element of mail fraud is a scheme to defraud. The mail fraud counts allege the same scheme to defraud as the one described in the conspiracy count. (Indictment at p. 31, ¶ 3). Specifically, that defendants "would and did deprive the SLBC/SLOC of its monies and funds by using such monies and funds for unauthorized purposes, by committing acts of bribery in violation of the laws of the State of Utah and other states, and by subjecting the SLBC/SLOC to the foreseeable risk of economic harm." (*Id.* at p. 8, ¶ 21). To describe the manner and means of the scheme, the indictment realleges paragraphs 21 through 29 of Count 1 wherein it is alleged, as set forth above, that defendants gave money and benefits, described as unlawful bribes, to influence IOC members to vote for Salt Lake City to host the Winter Olympic Games and that defendants concealed their acts from SLBC/SLOC and others. (*Id.* at p. 31, ¶ 3). Defendants are alleged to have executed the described scheme and artifice to defraud by depositing in the mail checks for the benefit of various IOC members or their families. (*Id.* at pp. 31–32, ¶ 4).

Counts 11 through 15 of the indictment charge the defendants with wire fraud and honest services fraud in violation of 18 U.S.C. §§ 1343, 1346.[8] An essential element of wire fraud is a scheme to defraud. The wire fraud counts allege the same scheme to defraud as the one described in the conspiracy count. (*Id.* at p. 33, ¶ 3). Specifically, that defendants "would and did deprive the SLBC/SLOC of its monies and funds by using such monies and funds for unauthorized purposes, by committing acts of bribery in violation of the laws of the State of Utah and other states, and by subjecting the SLBC/SLOC to the foreseeable risk of economic harm." (*Id.* at p. 8, ¶ 21). To describe the manner and means of the scheme, the indictment realleges paragraphs 21 through 29 of Count 1 wherein it is alleged, as set forth above, that defendants gave money and benefits, described as unlawful bribes, to influence IOC members to vote for Salt Lake City to host the Winter Olympic Games and that defendants concealed their acts from SLBC/SLOC and others. (*Id.* at p. 33, ¶ 3). Defendants are alleged to have executed the scheme by wiring sums of money for the benefit of various IOC members or their families. (*Id.* at pp. 33–34, ¶ 4).

In sum, after careful evaluation, the court concludes that it is not feasible to purge the indictment of what in essence are intertwined defective allegations of unlawful bribery without substantially altering the terms of the indictment. Because there is a possibility that the improper inclusion of allegations of bribery in violation of Utah's commercial bribery statute may have influenced the grand jury's decision to indict defendants for conspiracy, mail fraud and wire fraud, those counts must be dismissed.[9]

7. Counts 6 through 10 incorporate paragraphs 1 through 18 and 21 through 29 of count 1, the conspiracy count.

8. Counts 11 through 15 incorporate paragraphs 1 through 18 and 21 through 29 of count 1, the conspiracy count.

9. The court agrees with defendants that the grand jury should have been allowed to consider allegations, which essentially amount to breach of fiduciary duty, without the presence of defective and inflammatory allegations of illegal bribery.

The grand jury that indicted Welch and Johnson should have been given an opportunity to decide, without the inflammatory and infectious allegations of illegal bribery, whether the Defendants' conduct breached a fiduciary duty and, if so, whether it was the sort of breach of fiduciary duty that was intended to injure the SLBC/SLOC or oth-

## B. THE MAIL AND WIRE FRAUD CHARGES ARE SUFFICIENT TO STATE AN OFFENSE.

■ As additional grounds for their motion, defendants urge that the government's allegations of mail and wire fraud rely on theories that constitute an expansion of those statutes not permitted by law. Counts 6 through 10 and 11 through 15 of the indictment charge defendants with mail fraud and wire fraud respectively.[10]

The government asserts that its mail and wire fraud charges are based on three alternative property theories: (1) "that defendants' [sic] contrived a scheme to defraud SLBC/SLOC of actual property" (2) "of its right to control how its property was used," and (3) "of its right to defendants' honest services." (Resp. to Objection to R & R at 15).

### 1. Scheme to Defraud SLBC/SLOC of Actual Money or Property

The government's first theory of mail and wire fraud is that defendants schemed to defraud SLBC/SLOC of actual property. Defendants' position is that "[b]ecause the SLBC/SLOC's funds were spent for the purpose for which they were intend-ed—to get the Games—the SLBC/SLOC was not deprived of money or property." (Objection to R & R at 6).

The indictment alleges defendants used SLBC/SLOC funds to influence IOC members to vote for Salt Lake City to host the Winter Olympic Games, that such uses of SLBC/SLOC money was unauthorized, and that defendants concealed their alleged use of the funds. (*See, e.g.*, Indictment at pp. 8–12, ¶¶ 20–29). Inasmuch as the SLBC was organized "to seek the right" from the IOC to host the Olympic Winter Games (*Id.* at p. 2, ¶ 1), and inasmuch as defendants "planned, organized, directed, managed and coordinated the activities of the SLBC/SLOC" (*Id.* at p. 3, ¶¶ 5–6), defendants' argument, that SLBC/SLOC got what it desired, is certainly worthy of consideration at the appropriate time. However, resolution of those allegations turns on factual determinations, such as what, if any, of defendants' alleged conduct was authorized by SLBC/SLOC, and what, if anything, was concealed from SLBC/SLOC. Given the standard applicable to defendants' motion to dismiss, those issues are matters for trial. The court, therefore, agrees with the magistrate judge on this issue and adopts and incor-

---

erwise warranted indictment. The grand jury was denied that opportunity.
(Reply to Resp. to Objection to R & R at 9).

10. The mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 and 1346, provide in relevant part as follows:

Section 1341 provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined under this title or imprisoned not more than five years, or both."

Section 1343 provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both."

Section 1346 provides: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

porates herein the relevant portion of the R & R.

## 2. Scheme to Defraud SLBC/SLOC of Its Right to Control How Its Property Was Used

■ As an additional theory for the mail and wire fraud charges, the government contends that defendants deprived the Board of Trustees of SLBC/SLOC of its right to control SLBC/SLOC funds. Defendants' position is that such an intangible right is not a form of money or property recognized for purposes of the mail and wire fraud statutes.

■ The Tenth Circuit has ruled that the right to control the custody of one's money or the right to make decisions about how the funds are to be used is within the sphere of the wire fraud statute. *See United States v. Simpson*, 950 F.2d 1519, 1523 (10th Cir.1991) ("conspiracy to defraud the victim of the use or control of his money is also within the purview of the wire fraud statute"). By extrapolation, the court concludes that the right to control how funds are spent is also within the purview of the mail fraud statute.[11] Defendants' assertion that the right to control theory was rejected by the United States Supreme Court in *Cleveland v. United States*, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) is incorrect. Although the Supreme Court discussed and distinguished the use of the right to control property theory in private sector cases, the clear holding of the Court was that a state's right to control who obtained a renewable license to operate video poker machines was a regulatory interest, not a

property interest for purposes of the mail fraud statute. Nothing analogous to that situation is present here. The court agrees with the magistrate judge on this issue and adopts and incorporates herein the relevant portion of the R & R.

## 3. Scheme to Defraud SLBC/SLOC of Its Right to Defendants' Honest Services

■ The government also, as a separate theory for the mail fraud and wire fraud charges, alleges that defendants contrived a scheme to defraud SLBC/SLOC of its right to defendants' honest services. Defendants urge that the primary use of 18 U.S.C. § 1346 has been to prosecute dishonest government officials and that it cannot be used to prosecute honest services fraud in the private sector.[12]

Section 1346 provides that for the purposes of the mail and wire fraud statutes "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Although the Tenth Circuit has assumed, without deciding, that the statute is applicable to private scenarios, it has yet to expressly find section 1346 applicable to the private sector. *See United States v. Cochran*, 109 F.3d 660, 667 (10th Cir.1997) ("[a]ssuming without deciding that § 1346 has application where a private actor or quasiprivate actor is deprived of honest services in the context of a commercial transaction, it would give us great pause if a right to honest services is violated by every breach of contract or every misstatement made in the course of dealing"). *But see, United States v. Wang*, 898 F.Supp. 758, 761

---

11. "Because the language of the mail fraud and wire fraud statutes are [sic] so similar, cases construing one are applicable to the other." *United States v. Richards*, 204 F.3d 177, 207 n. 13 (5th Cir.), *cert. denied*, 531 U.S. 826, 121 S.Ct. 73, 148 L.Ed.2d 36 (2000).

12. Section 1346 was passed by Congress in 1988 to overrule *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that section 1341 mail fraud was limited to the protection of property rights and did not apply to schemes to defraud citizens of the intangible right to honest government.

(D.Colo.1995) ("[s]ection 1346 does not contain any language that would limit its application to the public's right to the honest services of public officials or would prohibit its application in this case to a private employer's right to the honest services of its employee"). Other circuit courts have found section 1346 applicable to both the public and private sectors.[13] Additionally, defendants' argument, that section 1346 is unconstitutional, has been rejected repeatedly.[14] The court concludes that the Tenth Circuit, under the allegations presented, would find that section 1346 can be used to prosecute honest services fraud in the private sector. The court agrees with the magistrate judge on this issue and adopts and incorporates herein the relevant portion of the R & R.

## C. THE INDICTMENT SUFFICIENTLY ALLEGES INTENT TO DEFRAUD.

As further grounds for their motion, defendants contend that the indictment fails to adequately allege that they intended to inflict harm on SLBC/SLOC and to profit personally, and, therefore, those counts must be dismissed.

"[I]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Wood*, 6 F.3d 692, 698 (10th Cir.1993) (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). The elements of mail and wire fraud are (1) a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the U.S. mails or wire communications in interstate or foreign commerce to execute the scheme. *See* 18 U.S.C §§ 1341, 1343; *Neder v. United States*, 527 U.S. 1, 20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)[15]; *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir.1997); *United States v. Warren*, 747 F.2d 1339, 1344 (10th Cir.1984). A scheme to defraud is not defined by the mail fraud and wire fraud statutes. However, it has been interpreted by case law as having an "intent" requirement.[16]

13. *See, e.g., United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir.2001); *United States v. Martin*, 228 F.3d 1, 17–18 (1st Cir.2000); *United States v. deVegter*, 198 F.3d 1324, 1327–30 (11th Cir.1999), *cert. denied*, 530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000); *United States v. Pennington*, 168 F.3d 1060, 1064–65 (8th Cir.1999); *United States v. Sancho*, 157 F.3d 918, 920–22 (2d Cir.1998), *cert. denied*, 525 U.S. 1162, 119 S.Ct. 1076, 143 L.Ed.2d 79 (1999); *United States v. DeFries*, 129 F.3d 1293, 1304–06 (D.C.Cir.1997); *United States v. Frost*, 125 F.3d 346, 363–70 (6th Cir.1997), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 41, 142 L.Ed.2d 32 (1998); *United States v. Harvard*, 103 F.3d 412, 420–21 (5th Cir.), *cert. denied*, 522 U.S. 824, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997).

14. *See, e.g., United States v. Frega*, 179 F.3d 793, 802–803 (9th Cir.1999), *cert. denied*, 528 U.S. 1191, 120 S.Ct. 1247, 146 L.Ed.2d 105

(2000); *United States v. Frost*, 125 F.3d 346, 370–371 (6th Cir.1997), *cert. denied*, 525 U.S. 810, 119 S.Ct. 40, 41 (1998); *United States v. Paradies*, 98 F.3d 1266, 1282–1284 (11th Cir.1996), *cert. denied*, 521 U.S. 1106, 117 S.Ct. 2483, 138 L.Ed.2d 992 (1997); *United States v. Gray*, 96 F.3d 769, 776–777 (5th Cir.1996), *cert. denied*, 520 U.S. 1129, 117 S.Ct. 1275, 137 L.Ed.2d 351 (1997); *United States v. Bryan*, 58 F.3d 933, 941 (4th Cir.1995), abrogated on other grounds by *United States v. O'Hagan*, 521 U.S. 642, 650, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997).

15. Materiality of any misrepresentation is also an element of the mail and wire fraud statutes. *Neder*, 527 U.S. at 25, 119 S.Ct. 1827.

16. *See, e.g., United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir.2000); *United States v. Yarnell*, 129 F.3d 1127, 1133 (10th Cir.1997).

"[A] scheme to defraud is conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension." ... The objective reference to "persons of ordinary prudence or comprehension" assists in determining whether the accused's conduct was "calculated to deceive" .... Fraudulent intent is required .... That said, a scheme to defraud by false representations may be accomplished by patently false statements or statements made with a reckless indifference as to their truth or falsity, and deceitful concealment of material facts may constitute actual fraud.

*Cochran,* 109 F.3d at 664–665 (citations omitted). *See also, United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991) ("[t]o establish the existence of a scheme to defraud, the government must present proof that the defendants possessed a fraudulent intent"). The intent requirement is typically proven by circumstantial evidence.

As the authors of a recent survey of criminal law explain in connection with the intent requirement of mail and wire fraud,

[b]ecause intent involves the defendant's state of mind, and is difficult to prove directly, it is usually proven by circumstantial evidence. A variety of circumstantial evidence has been held relevant to infer fraudulent intent. Intent may be inferred from evidence that the defendant attempted to conceal activity. Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted money to his own use.

Kathleen Flavin & Kathleen Corrigan, *Eleventh Survey of White Collar Crime: Mail Fraud and Wire Fraud,* 33 Am. Crim. L.Rev. 861, 869–70 (1996) (citations and internal punctuation omitted).

*United States v. Prows,* 118 F.3d 686, 692 (10th Cir.1997).

### 1. *Intent to Defraud*

█ Defendants first contend that allegations that they "breached duties to the SLBC/SLOC, provided unauthorized benefits to IOC members and their families ... and misrepresented and concealed those actions from the SLBC/SLOC Board are not sufficient to allege an intent to defraud." (Mem. Supp. at p. 51). The court disagrees. "[W]here actual harm exists as a natural and probable result of a scheme, fraudulent intent may be inferred." *Cochran,* 109 F.3d at 668. The indictment. *inter alia,* alleges that defendants deprived SLBC/SLOC of its funds by using the money for unauthorized purposes and subjecting SLBC/SLOC to a foreseeable risk of economic harm. (Indictment at p. 8, ¶ 21). Additionally, "a scheme to defraud by false representations may be accomplished by ... deceitful concealment of material facts [which] may constitute actual fraud." *Cochran,* 109 F.3d at 665. *See also, United States v. Trammell,* 133 F.3d 1343, 1352 (10th Cir.1998) (indifference to truth is evidence of fraudulent intent). The indictment, *inter alia,* alleges and describes various specific methods and devices by which defendants allegedly concealed many of the alleged benefits they gave to IOC members. (*See* Indictment at p. 10, ¶ 24).

### 2. *Personal Gain*

█ Finally, defendants contend the indictment is defective because there is no allegation that they sought to reap personal economic gain from their alleged conduct. For the reasons outlined in his R & R, the court agrees with the magistrate judge that "personal gain is not necessarily a requirement of intent or a scheme to defraud but may assist in measuring or characterizing whether a scheme or arti-

**1072**

fice to defraud occurred." R & R at 17. *See, e.g., United States v. Stockheimer,* 157 F.3d 1082, 1087–1088 (7th Cir.1998), *cert. denied,* 525 U.S. 1184, 119 S.Ct. 1127, 143 L.Ed.2d 121 (1999) ("intent to defraud does not turn on personal gain ... all that matters is that [defendant] intended to inflict a loss").

In sum, for purposes of sufficiency of the indictment, the government need only allege the elements of the crime and a factual basis giving rise to the charges. The court is satisfied that the government sufficiently alleges those items in the indictment. Proof of the allegations is reserved for trial. The court adopts and incorporates herein the relevant portion of the R & R.

## IV. CONCLUSION

Defendants' motion to dismiss count 1, counts 6 through 10, and counts 11 through 15 of the indictment charging conspiracy, mail fraud and wire fraud respectively, is granted for the reasons stated under Part III. A. of the court's opinion. Defendants' alternative grounds for their motion are denied.

Accordingly, IT IS HEREBY ORDERED that count 1 (conspiracy), counts 6 through 10 (mail fraud and honest service fraud), and counts 11 through 15 (wire fraud and honest service fraud) of the indictment are dismissed.