United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

————————————————

No. 04-41077

————————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NOLON LEE PATTERSON,

Defendant - Appellant.

————————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
5:03-CR-29-DF-2

————————————————————————————

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT,* District Judge.

EDITH BROWN CLEMENT, Circuit Judge:

Nolon Lee Patterson was convicted of possession of a firearm while an unlawful user of a

controlled substance, pursuant to 18 U.S.C. § 922(g)(3). For the reasons that follow, we affirm.

**I. FACTS AND PROCEEDINGS**

An investigation of Nolon Lee Patterson and his father revealed that the two men were using

and selling marijuana from their residence and that they possessed a number of firearms. On August

11, 2003, federal and state authorities executed a search warrant at their residence. From information

obtained during the course of the investigation, the officers believed Patterson's father resided in a

---

*District Judge of the Eastern District of Louisiana, sitting by designation.

larger house that was the primary residence on the property and that Patterson occupied the smaller house located behind his father's.

When the authorities arrived, Patterson was in the smaller house with his father. Searching this structure, authorities found a loaded semiautomatic pistol located inside the back pocket of a chair. When asked about the gun, Patterson claimed that it was his and accused the agent of trying to trick him into admitting it was his father's. Patterson later claimed that he was holding the gun for his brother. The officers also found evidence of marijuana use: six plastic bags containing marijuana, a metal canister that held cigarette rolling paper, a lighter, two pipes for smoking marijuana, marijuana residue in the pipes, and a "High Times" magazine. In addition, the officers found two pairs of shorts that were too small for Patterson's father but that could have fit Patterson. Outside of the house near a storage shed, the officers found two buckets in which marijuana was being grown.

The officers read Patterson his *Miranda* rights and informed him that he would probably be released pending any hearings, during which time he would have to refrain from using drugs. Patterson stated he did not think he could abide by such a condition. The officers questioned Patterson about his marijuana use. He admitted that he had been using the drug for approximately two years. When officers informed Patterson that smoking marijuana and possessing a firearm violates federal law, Patterson expressed dissatisfaction with the law. A urine sample submitted by Patterson on August 18, 2003, tested positive for marijuana.

On September 9, 2003, Patterson was indicted for possession of a firearm while an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Patterson pleaded not guilty and proceeded to trial. The jury convicted him, and he was sentenced to twenty-one months imprisonment, followed by a two-year term of supervised release. Patterson timely appeals and raises

2

four issues: (1) the constitutionality of the statute under which he was convicted; (2) the sufficiency of the evidence to support conviction; (3) the correctness of the jury instructions on the definition of "unlawful user;" and (4) the admissibility of certain evidence.

## II. DISCUSSION

### A. The Constitutionality of 18 U.S.C. § 922(g)(3)

At the close of the government's case, Patterson requested that the district court dismiss the indictment, claiming that § 922(g)(3) was unconstitutional. Patterson contends that § 922(g)(3) violates the Second Amendment and is vague and overbroad. The statute provides:

> It shall be unlawful for any person who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3). "This Court reviews de novo the district court's decision with respect to challenges to the constitutionality of a federal statute." *United States v. Shelton*, 325 F.3d 553, 563 (5th Cir. 2003) (citing *United States v. Rasco*, 123 F.3d 222, 226 (5th Cir. 1997)).

Patterson's Second Amendment challenge to § 922(g)(3) is unavailing in light of *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), and *United States v. Everist*, 368 F.3d 517 (5th Cir. 2004). In *Emerson*, this court reasoned that the Second Amendment's right to bear arms is subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." 270 F.3d at 261. Congress may prohibit those who pose a risk to society, like felons, from exercising the right to bear arms. *Id*. The *Emerson* court found 18 U.S.C. § 922(g)(8), which prohibits the possession of a firearm by

3

individuals subject to domestic restraining orders, to be constitutional. *Id.* In *Everist*, the defendant challenged the constitutionality of § 922(g)(1), which prohibits felons from possessing firearms. The *Everist* court found that the provision survived a constitutional challenge for the same reason, citing to *Emerson*. 368 F.3d at 519. Prohibiting unlawful drug users from possessing firearms is not inconsistent with the right to bear arms guaranteed by the Second Amendment as construed in *Emerson* and *Everist*. Like the classes of criminals in *Emerson* and *Everist*, unlawful users of controlled substances pose a risk to society if permitted to bear arms. Section 922(g)(3) survives Patterson's constitutional challenge.

Patterson also contends that § 922(g)(3) is unconstitutionally vague and overbroad. This court rendered a decision on a vagueness challenge to § 922(g)(3) in *United States v. Edwards,* 182 F.3d 333 (5th Cir. 1999). The vagueness challenge in *Edwards* related only to the statute's failure to "designate a time frame concerning when the individual must use the controlled substance in connection with the possession of a firearm." *Id.* at 334–35. Patterson's challenge is broader; he argues that the statute is unconstitutional for vagueness because the term "unlawful user" is undefined. Nonetheless, the reasoning of the *Edwards* court proves fatal to Patterson's assertion. First, a criminal statute is not unconstitutionally vague "if it 'defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Id.* at 335 (quoting *United States v. Gray*, 96 F.3d 769, 776 (5th Cir. 1996)). Second, "when a vagueness challenge does not involve First Amendment freedoms, [this court] examine[s] the statute only in light of the facts of the case at hand." *Id.* The *Edwards* court concluded that the application of § 933(g)(3) was clearly constitutional as applied to the defendant because "an ordinary person would understand that [the

4

defendant's] actions establish him as 'an unlawful user of a controlled substance' while in possession of a firearm." *Id*. at 335–36.

This analysis compels the same result for Patterson's case. As the statute applies to Patterson, it is not vague; an ordinary person would understand that Patterson's actions establish him as an unlawful user. He admitted that he regularly used marijuana and that he would have a difficult time complying with a release condition that required him not to use marijuana, and his urine specimen a week later tested positive for the drug. Section 922(3)(g) is not unconstitutionally vague as applied to Patterson.

## B. Sufficiency of the Evidence

Patterson did not present evidence at trial. Therefore, because he moved for a judgment of acquittal at the close of the government's case, the standard of review in assessing his challenge to the sufficiency of the evidence is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Virgin-Moreno*, 265 F.3d 276, 284 (5th Cir. 2001). Evidence is viewed in the light most favorable to the government and with all reasonable inferences and credibility choices made in support of the jury's verdict. *United States v. Kim*, 884 F.2d 189, 192 (5th Cir. 1989) (citation omitted). Additionally, review is limited to whether we find the jury's verdict to be reasonable, not whether we believe it to be correct. *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001).

The evidence supports a finding that Patterson used marijuana. The evidence showed both possession of marijuana and a pattern of use. Patterson admitted that the government had seized marijuana as well as metal canisters containing related paraphernalia. One officer testified that Patterson admitted to "being a user of marijuana for some time." He also stated that Patterson

5

expressed doubt about whether or not he could comply with a condition of release that required him to abstain from drug use. Another agent testified that Patterson admitted he had been using the drug for two years. Additionally, Patterson's urine specimen tested positive for marijuana. One of the government's expert witnesses testified that marijuana stays in the system of an occasional user for up to two weeks.

The evidence also supports a finding that Patterson possessed a firearm. Possession can be either actual or constructive. *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). Generally, a person has constructive possession over contraband if he knowingly has ownership or control over the contraband itself or over the premises in which the contraband is located. *Id*. Further, constructive possession need not be exclusive; it may be joint with others. *Id*. Evidence must support "at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995). Patterson stated that he owned the weapon. Later, Patterson stated that he was holding the gun for his brother for "safekeeping." Patterson's statements, while conflicting, do support the inference that he had knowledge of and access to the firearm. In addition, the clothing found in the residence where the firearm was located tended to show that Patterson resided there, corroborating Patterson's statements of ownership and possession. The jury could have concluded that Patterson actually or constructively possessed the weapon. Viewing all reasonable inferences and credibility choices in support of the verdict, we find that the jury could have concluded that Patterson was an unlawful user of marijuana and that he constructively possessed the firearm beyond a reasonable doubt.

## C. The Definition of Unlawful User

This court "review[s] *de novo* whether an instruction misstated an element of a statutory

6

crime." *United States v. Guidry*, 406 F.3d 314, 321 (5th Cir. 2005) (citing *United States v. Morales-Palacios*, 369 F.3d 442, 445 (5th Cir. 2004)). This court must "consider whether the jury instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *Id.* (internal quotation omitted). Any error in the jury instruction is subject to harmless error review. *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003). Rule 52(a) of the Federal Rules of Criminal Procedure provides the standard for harmless error review: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). An error affects substantial rights if it affects the outcome of the district court's proceedings. *United States v. Pineiro*, 410 F.3d 282, 285 (5th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). If the district court erred, then the government bears the burden of showing the error was harmless beyond a reasonable doubt. *Id.*

The district court based its jury instruction on the definition of unlawful user from two sources: (1) the definition[1] provided by this court in *United States v. Herrera* ("*Herrera I*"), 289 F.3d 311, 323–24 (5th Cir. 2002), *vacated*, *United States v. Herrera* ("*Herrera II*"), 313 F.3d 882 (5th Cir. 2002) (en banc), and (2) an inference instruction advocated by the government.[2] At trial, Patterson objected to the inference instruction portion of the district court's charge. The instruction stated:

> With respect to the first element of the offense, the term "unlawful user of a

---

[1]The *Herrera I* definition adopted by the district court is nearly identical to the one given for "addict" under 21 U.S.C. § 802(1).

[2]The language for this inference instruction appears in the regulations implementing § 922(g)(3), specifically the discussion of "unlawful user." *See* 27 C.F.R. 478.11.

7

controlled substance" means one who uses narcotics so frequently and in such quantities as to lose the power of self control and thereby pose a danger to the public morals, health, safety, or welfare. An inference that a person was a user of a controlled substance may be drawn from evidence of a pattern of use or possession of a controlled substance that reasonably covers the time the firearm was possessed.

Patterson argues that the *Herrera I* definition of "unlawful user" is correct, an assertion which would make conviction more difficult. However, the district court misstated the law in its instruction defining "unlawful user." The *Herrera I* standard employed by the district court was rejected by this court in *Herrera II*. Additionally, it is inconsistent with the definition employed by other circuits. However, the error is subject to harmless error review, and we find the district court's error was harmless.

*Herrera I* was vacated by this court's decision to undertake en banc review. Sitting en banc, the *Herrera II* court reviewed the propriety of the defendant's "unlawful user" conviction under the limited manifest miscarriage of justice standard of review because, in his motion for a judgment of acquittal, Herrera had contested only the addiction, not the unlawful user, prong. *Herrera II*, 313 F.3d at 884–85. As a result, the court did not delineate a precise definition of the term "unlawful user;" rather, the court analyzed whether the record was devoid of any evidence that the defendant qualified as an "unlawful user" at the time he possessed the firearm. *Id.* In so doing, the *Herrera II* court was guided by the government's assertion of the circumstances under which it would charge someone for the crime:

> [T]he Government conceded in its supplemental en banc brief that, for a defendant to be an "unlawful user" for § 922(g)(3) purposes, his "drug use would have to be with regularity and over an extended period of time". The Government reiterated this at en banc oral argument: "We certainly wouldn't charge one time use. It would have to be over a period of time".

*Id.* at 885. Under the narrow standard of review, the *Herrera II* court held that the record was not

8

devoid of evidence that the defendant unlawfully used cocaine while possessing firearms. *Id.* In Patterson's case, the "pattern of use" language in the inference instruction aligns with the above-quoted "period of time" language considered by the *Herrera II* court; moreover, the inference instruction properly requires a time frame that coincides with possession of the firearm.

Furthermore, no circuit has construed the statute in the manner proposed by the district court and *Herrera I*. Rather, cases interpreting § 922(g)(3) typically discuss two concepts: contemporaneousness and regularity. The Eighth Circuit has explained that "courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citing *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002)), *vacated on other grounds,* 125 S. Ct. 1047 (2005) (finding *Booker* error), *reinstated,* 414 F.3d 942 (8th Cir. 2005; *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001)). The Third, Fourth, and Ninth Circuits have stated that there must be some regularity of drug use in addition to contemporaneousness to meet the statute's requirements. *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004) ("[T]o be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm."); *Jackson*, 280 F.3d at 406 (upholding district court finding that the prosecution must establish "a pattern of use and recency of use"); *Purdy*, 264 F.3d at 812–13 ("[T]o sustain a conviction under § 922(g)(3), the government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his . . . possession of a firearm."). Based on *Herrera II* and the construction of the statute by other circuits, we conclude that the district court erred in its definition of "unlawful user."

9

Though the district court erred, this error was harmless. Patterson suffered no injustice because he would have been convicted even had the jury been correctly charged. The jury convicted him of a higher standard, a standard approaching "addict," as opposed to the lower standard of "unlawful user." Pursuant to the court's instruction, the jury found that Patterson was just short of an addict, and in so doing, it necessarily must have found that he was also an unlawful user. The second sentence of the instruction, contested by Patterson, guided the jury on a permissible inference. The erroneous instruction was, therefore, harmless.

## D. The Admissibility of Certain Evidence under Rule 403

Patterson argues that five items of evidence were improperly admitted: two photographs portraying video surveillance equipment, two photographs of marijuana growing in buckets, and an issue of "High Times" magazine. Patterson claims each item is unfairly prejudicial under Federal Rule of Evidence 403. FED. R. EVID. 403. We review a district court's decision regarding the admissibility of evidence for abuse of discretion. *United States v. Hicks*, 389 F.3d 514, 522 (5th Cir. 2004) (citing *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993)).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Pace*, 10 F.3d at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)) (alteration in original). *See also United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994).

Patterson argues that the evidence at issue is relevant to whether he was distributing

10

marijuana, not to whether he was using it. As a result, he claims the evidence is more prejudicial than probative. This argument is unavailing. The magazine and the photographs are relevant; they show that it was more probable that Patterson used marijuana. Like all relevant evidence, the items are inherently prejudicial; under the circumstances of the case, however, they are not unfairly so. The trial court did not abuse its discretion in admitting the evidence.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.