United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 2, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-61048

Summary Calendar

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CAREL EDWARD HORTON, also known as Carl Edward Horton

Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:04-CR-64

_____

Before KING, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Defendant-appellant Carel Edward Horton appeals from his conviction and sentence for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Horton challenges the sufficiency of the evidence to establish his constructive possession of the assault rifle found

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

in the backseat of his vehicle during a police investigation of a related shooting incident.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 2004, Carel Edward Horton ("Horton") left work around 5:00 p.m. and went to his grandmother's house, where he learned that his cousin, Devon Davis ("D. Davis"), had recently been shot on Capitol Street in Jackson, Mississippi.  According to the government, Horton then met with D. Davis's brother Maurice Davis ("M. Davis") at Horton's mother's house and planned to drive to a house located on Inge Street, where D. Davis's assailant allegedly resided.  With Horton driving his 1991 burgundy Cadillac, the two men then apparently went to the location on Inge Street and parked in front of the house of Patricia Nowlin ("Nowlin").  Nowlin testified that she witnessed three or four unidentified men emerge from the Cadillac and approach a nearby house.  After a brief altercation, one of the men shot an individual at the house named Harry McNeil in the leg.[1]

When Jackson Police Sergeant Tamara Miliken ("Miliken") arrived at the scene to investigate the shooting of D. Davis, she heard shots being fired from Inge Street and called for backup.  Miliken also noticed a burgundy Cadillac parked near the location

---

[1]  Fred Mallard and Derrick Young--two of the men who allegedly accompanied M. Davis and Horton to the Inge Street location in separate cars--were also apparently shot in the ensuing gunfight, although neither man identified who shot him.

-2-

of the firing and observed people running away from Inge Street. Shortly thereafter, Miliken was joined at the scene by Jackson Police Detective Kent Daniel and Jackson Police Officer Cordell Frazier ("Frazier"). By the time Frazier arrived, nobody was around the Cadillac, but the front and rear passenger doors were ajar. Frazier saw an assault rifle with a loaded clip of ammunition lying in plain view in the backseat of the Cadillac.[2] The car was not running, and there was no key in the ignition, which did not appear to have been tampered with.

While at the Inge Street location, Jackson Police Officer Charlando Thompson ("Thompson"), who had relieved Frazier at the scene, received a dispatch call to investigate the theft of a burgundy Cadillac. Thompson responded to the call and met with Horton at a nearby location on Bratton Street. At first, Horton claimed that he had left his car running with the key in the ignition while at a grocery store and that it was stolen. Because Horton's car was found at the scene of a crime, Thompson apprehended Horton and found a car key that fit the Cadillac's ignition in Horton's pocket during a routine patdown.[3] At the

_____

[2] The rifle and the loaded clip of ammunition were submitted into evidence. A federal agent later testified that the weapon was in operating condition. A crime scene investigator also testified that the lack of discernable fingerprints on the rifle was probably due to raised surfaces and smudges on the weapon, which he stated was a common problem in such investigations.

[3] After Horton admitted that the car belonged to him, the police discovered Horton's wallet, driver's license, and a

police station, a gunshot residue test was performed on Horton to determine whether he had recently fired a weapon, which came back negative. Horton again stated that his car was stolen when he went into the grocery store to buy beer and that a defect in the ignition switch allowed the car to be started without a key.[4] He then changed his story and claimed that M. Davis had taken his car while he was in the grocery store. Finally, after the detectives told Horton that they believed he was lying, Horton signed a written statement, admitting that his car had not been stolen, that he and M. Davis had driven to Inge Street, and that M. Davis had shot a man in the leg.[5]

Based on the rifle found in the backseat of his car and his previous conviction for murder on November 14, 1988, Horton was indicted on one count of knowing possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Although he unsuccessfully moved for a judgment of

Mississippi Department of Corrections document bearing his name in the car after a complete search of the vehicle.

[4] The man who sold the Cadillac to Horton testified at trial that the anti-theft features of the vehicle would make it impossible to start the car without the ignition key. However, Horton's wife, Velissha Horton, testified that the key could be removed from the ignition while the car was running and that the car could be driven in this way.

[5] During his case-in-chief, Horton conceded that he had signed the statement but insisted that he did so only because the detectives told him that he would be let go if he cooperated. Horton does not contend on appeal, however, that the statement was involuntary or illegally coerced in any way.

-4-

acquittal under Federal Rule of Criminal Procedure 29(a) after the government presented its case-in-chief, Horton did not renew his Rule 29(a) motion at the conclusion of all the evidence. On October 25, 2004, the jury convicted Horton. The district court subsequently sentenced Horton to sixty-three months in prison, a three-year term of supervised release, and a $100 special assessment. Horton timely appealed his conviction and sentence.

## II.  DISCUSSION

On appeal, Horton challenges only the sufficiency of the evidence with respect to establishing his constructive possession of the rifle found in the backseat of his Cadillac.[6] More specifically, Horton argues that the government's circumstantial evidence connecting him to the weapon was too weak to overcome the lack of direct witness testimony placing Horton in the car at any time relevant to the shooting incident. Contrary to the government's presentation of the evidence, Horton maintains that the evidence gives at least equal support to a theory of innocence as to a theory of guilt because it is highly unlikely that Horton would have left the rifle in the backseat of his car on the way to an armed confrontation. Accordingly, Horton contends that a reasonable jury would have entertained reasonable

---

[6] In order to establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005).

-5-

doubts about his guilt, and reversal is required.

The government responds that the evidence adduced at trial was sufficient to sustain the jury's verdict. First, Horton himself signed a written statement that placed him in the car at the time of the shooting. Moreover, the jury was presented with circumstantial evidence and testimony that could give rise to a reasonable inference of constructive possession of the rifle found in the backseat of his Cadillac--that is, Horton was in a position to exercise dominion and control over the rifle. See United States v. Patterson, 431 F.3d 832, 837 (5th Cir. 2005) ("Generally, a person has constructive possession over contraband if he knowingly has control over the contraband itself or over the premises in which the contraband is located."). Therefore, the government urges this court to affirm the conviction and sentence.

As a general matter, we review challenges to the sufficiency of the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in favor of the jury's verdict. See United States v. Cain, 440 F.3d 672, 675 (5th Cir. 2006); United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005) ("It is not our role . . . to second-guess the determinations of the jury as to the credibility of the evidence."). When, however, as here, the defendant fails to renew his motion for a judgment of acquittal at the close of all the evidence, we review only for a manifest miscarriage of

justice--that is, "the record must be devoid of evidence of guilt or the evidence must be so tenuous that a conviction is shocking." United States v. Avants, 367 F.3d 433, 449 (5th Cir. 2004); see also United States v. Green, 293 F.3d 886, 895 (5th Cir. 2002) (noting that "sufficiency of the evidence claims are reviewed under a stricter than usual standard, because none of the defendants renewed their motions for judgment of acquittal at the close of all evidence").

Our review of the record reveals ample evidence and witness testimony from which the jury could draw a reasonable inference of guilt to sustain Horton's conviction. Although Horton now denies admitting that he drove M. Davis to the location on Inge Street and argues that someone stole his car and left the rifle in the backseat, the government's witnesses testified that the shooting incident took place just moments after Horton parked his car on Inge Street and that nobody returned to the Cadillac after the gunfire began until the police arrived at the scene and found the rifle in the backseat. This evidence provided a sufficient basis to support the jury's finding that Horton at least constructively possessed the rifle found in his car. See Patterson, 431 F.3d at 837 (noting that the jury was entitled to conclude that the defendant constructively possessed a firearm based on evidence that "he had knowledge of and access to the firearm"). Moreover, the jury was entitled to disbelieve Horton in light of the inconsistencies in his own version of the story

during the investigation.  See <u>United States v. Rodriquez</u>, 278 F.3d 486, 490 (5th Cir. 2002) (noting that "the jury is free to choose among all reasonable constructions of the evidence and this Court will accept all credibility choices that tend to support the jury's verdict").  Because there is unquestionably evidence of guilt in the record to sustain the conviction, we conclude that there has been no manifest miscarriage of justice in this case nor any other persuasive grounds for reversal.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Horton's conviction and sentence.