NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0510n.06

Case No. 20-6323

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| | ) | Nov 09, 2021 |
| *Plaintiff-Appellee*, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MARK A. LUNDY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | OPINION |

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges

**NALBANDIAN, Circuit Judge.** Although the Constitution guarantees an individual right to keep and bear arms, Congress has identified certain individuals prohibited from possessing firearms. One such individual is an unlawful user of any controlled substance. *See* 18 U.S.C. § 922(g)(3). Despite movements to decriminalize or legalize it on the state level, marijuana remains a controlled substance at the federal level. And Mark Lundy is a user of marijuana.

A jury convicted Lundy of possessing firearms while being an unlawful user of marijuana, possession of a controlled substance, and manufacturing a controlled substance. On appeal, Lundy raises several challenges to his convictions and his sentence. For the following reasons, we **AFFIRM.**

**I.**

The Kentucky State Police (KSP) began investigating Lundy in May 2018 after receiving a complaint from the Kentucky Department of Agriculture (KDA) that Lundy was growing cannabis on his property.[1] An undercover officer visited a cannabidiol (CBD) and hemp store associated with Lundy and learned from a store clerk that Lundy was the hemp farmer supplying the products to the store. But there was one key problem with Lundy's status as a hemp farmer and supplier: the KDA had denied Lundy's application for a hemp license in 2017 because of his criminal history involving marijuana and drug paraphernalia. And since Lundy could not grow or process hemp, the KSP executed a search warrant on his property.

There were two searches. KSP officers searched in July 2018 and were later joined by officers from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for a second search in September. In both searches, officers observed a large crop of cannabis plants in an outside field, a smaller indoor grow of cannabis plants and growing equipment, and more than 200 pounds of processed cannabis. Along with cannabis, officers also discovered firearms and drug paraphernalia. Some firearms were locked in a safe, but others were loaded and sitting out by doorways or on Lundy's nightstand. Laboratory analysis later revealed dozens of plants and thousands of grams of cannabis seized from the house contained high enough THC levels to be the controlled substance marijuana.

---

[1] At trial, there was some confusion about Lundy's seemingly interchangeable usage of the words "cannabis," "marijuana," and "hemp." For our purposes: cannabis refers to the broad family of plants that includes both marijuana and hemp. Hemp is a type of cannabis which contains 0.3% THC or less. Plants that contain more THC are considered marijuana, which the Controlled Substance Act lists as a Schedule I substance. *See* 21 U.S.C. § 802(16); 7 U.S.C. § 1639*o*(1); 21 C.F.R. § 1308.11(d)(23).

During the July search, KSP Trooper Kevin Davis spoke to Lundy for several hours and recorded the conversation. During the conversation, Lundy offered to smoke marijuana with Davis. Lundy also emphasized to Davis that the marijuana at the residence was for personal use, and not for sale.

After a state judge issued an arrest warrant, Lundy surrendered himself and agreed to a recorded interview with an ATF agent and his attorney present. Lundy admitted to possessing the marijuana, but repeatedly emphasized that the marijuana was for personal use and not to sell, although he admitted to giving marijuana away. Lundy told the agent he had been using marijuana since he was in his teens and admitted to smoking marijuana in the past few days. Lundy stated that he grew both hemp and marijuana, but he knew which plants were "hot," meaning they had a THC level higher than .03%. (R. 101, Tr. Vol. 4, PID 881.) Lundy submitted hair and urine samples that tested positive for marijuana.

A federal grand jury indicted Lundy. ATF and KSP officers then went to Lundy's home to arrest him. While checking to see if Lundy was home, officers observed two firearms, another indoor cannabis grow set up, and suspected drug paraphernalia. Officers eventually arrested Lundy later that day.

The grand jury superseded the indictment with new charges based on the evidence gathered on the day of Lundy's arrest. Lundy testified in his own defense, including a discussion on the difference between marijuana and hemp. He testified that there was not a "whole lot of difference" between smoking the two, but that smoking marijuana was "a little bit more intense." (R. 102, Tr. Vol. 5, PID 1136.) Lundy also explained that he was aware hemp and marijuana have different THC levels, specifically that hemp "needed to be low," meaning below .03%. (*Id.* at 1147.) He did not dispute the Government's reporting that 2,067 plants were on his property in 2018, he did not

have a permit to grow hemp, and the guns and marijuana seized by the Government during their searches were his. On the firearms, Lundy claimed that they were all for hunting and protecting his farm from nuisance animals. On cross-examination, Lundy acknowledged that one of the pistols he kept loaded in his nightstand was for self-protection.

The jury convicted Lundy on four of the six counts in the indictment. One count was possessing firearms while being an unlawful user of marijuana. *See* 18 U.S.C. §§ 922(g)(3), 924(a)(2). The jury also convicted Lundy of possession of a controlled substance, *see* 21 U.S.C. § 844(a), and on two counts of manufacturing a controlled substance, *see* 21 U.S.C. § 841(a)(1), (b)(1)(D). For Sentencing Guideline calculation purposes, Lundy was held accountable for 5,124.667 grams of marijuana and sixteen firearms. After grouping the counts, adjusting for Guideline enhancements, and analyzing Lundy's criminal history, the district court calculated a Guideline imprisonment range of 46 to 57 months. The court sentenced Lundy to 46 months imprisonment. Lundy moved for a judgment of acquittal, *see* Fed. R. Crim. P. 29, or alternatively for a new trial, *see* Fed. R. Crim. P. 33. The district court denied his motion.

Lundy now raises several issues on appeal.

## II.

Lundy contends that the evidence presented at trial was insufficient to support his convictions and argues that the district court erred in refusing his proposed jury instruction. Lundy also attacks § 922(g)(3) as being void for vagueness and claims the district court's calculation of his base offense level and two firearm-related enhancements were error.

## A.

Lundy first argues that the district court erroneously denied his Rule 29 motion for acquittal because of insufficient evidence. When we review whether the evidence was sufficient, our inquiry

is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ward*, 957 F.3d 691, 695 (6th Cir. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This inquiry draws "all reasonable inferences in favor of the government," and we will not conduct our own weighing of the evidence, credibility determination of witnesses, or substitute our judgment for the jury's. *Id.*

Lundy's challenge rests on two main arguments. First, that the Government failed to prove that Lundy knew he was prohibited from possessing a firearm. And second, that the Government failed to prove that Lundy knew he was possessing and manufacturing marijuana, a controlled substance, and not hemp. Both arguments are unpersuasive.

We begin with whether the Government needed to prove that Lundy knew he was prohibited from possessing a firearm. Section 18 U.S.C. § 922(g) lists nine categories of individuals for whom it is unlawful to possess firearms. And 18 U.S.C. § 924(a) adds that an individual with a § 922(g) status who "knowingly violates" that provision shall be fined and imprisoned for up to ten years. To convict Lundy, the Government first had to show that Lundy violated § 922(g) because of his status as (1) "an unlawful user of . . . any controlled substance" (the status element) who (2) "possess[ed] . . . [a] firearm" (the possession element). *Id*. § 922(g), (g)(3). Then, it had to prove that Lundy "knowingly violate[d]" § 922(g). *Id.* § 924(a).

The Supreme Court addressed how the mens rea element of § 924(a) interacted with the status element of § 922(g) in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Rehaif, as an alien illegally in the United States, was prohibited from possessing a firearm. *See* 18 U.S.C. § 922(g)(5). After learning of his possession of firearms, the Government prosecuted him for violating

5

§ 922(g)(5) and § 924(a)(2). At trial, the judge instructed the jury (over Rehaif's objection) that the Government did not have to prove that Rehaif *knew* he was unlawfully in the United States.

The Supreme Court reversed, holding the word "knowingly" in § 924(a)(2) applied to the status element of § 922(g). *Rehaif*, 139 S. Ct. at 2196. This meant that in prosecutions under 18 U.S.C. § 922(g) and § 924(a)(2), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.[2] Notably, the jury instruction the Court rejected dealt with Rehaif's knowledge of his status, not his knowledge that he was prohibited from possessing a firearm because of that status.

But here, Lundy argues that the Government had to prove that he knew he was prohibited from possessing firearms, not just that he knew he was an unlawful user of a controlled substance. In making that argument, Lundy asks us to extend *Rehaif*'s holding beyond its scope and contrary to our precedent.

In *United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019), *cert. denied sub nom. Hope v. United States*, 140 S. Ct. 814 (2020), and *cert. denied*, 140 S. Ct. 2572 (2020), we faced a similar question. Police arrested two defendants with marijuana and firearms and used Facebook and other circumstantial evidence to prove that the defendants were habitual marijuana users. Because the trial occurred before *Rehaif*, the district court did not include the defendants' knowledge of their status as unlawful drug users in the jury instruction. On appeal, the defendants, like Lundy, argued that *Rehaif* required "that the Government prove each defendant knew he was *prohibited from*

---

[2] The Supreme Court has since said that in felon-in-possession cases, *see* § 922(g)(1), the Government must prove that the defendant knew of his status as a felon. *See Greer v. United States*, 141 S. Ct. 2090, 2095 (2021).

6

*possession* [of a firearm] because he was an unlawful user of a controlled substance . . . in other words he knew of his status *as a prohibited person.*" *Bowens*, 938 F.3d at 797 (quotations omitted). We rejected that argument and instead interpreted *Rehaif* to say that "in a prosecution under § 922(g)(3), the Government arguably must prove that defendants knew they were unlawful users of a controlled substance, but not, as defendants appear to argue, that they knew unlawful users of controlled substances were prohibited from possessing firearms under federal law." *Id*. We reasoned that such a reading would clash with "the venerable maxim that ignorance of the law is no excuse." *Id.* And other circuits who have considered the same § 922(g) knowledge question agree.[3] Lundy's interpretation of *Rehaif* is thus incorrect.

So to sustain a conviction for possession of a firearm by a user of controlled substances, the Government must prove that "the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *Bowens*, 938 F.3d at 793 (quoting *United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009)). And under *Rehaif* and § 922(g)(3), the Government must prove that the defendant knew he possessed a firearm and knew he was an unlawful user of drugs. *See Kaspereit*, 994 F.3d at 1208. Lundy does not contest that he knew he possessed firearms, but he claims the Government failed to prove that he knew he was an unlawful user of drugs because Lundy thought he was just using hemp.[4] Indeed, Lundy

---

[3] *See United States v. Trevino*, 989 F.3d 402, 405 (5th Cir. 2021) ("Our cases applying *Rehaif* have not required the Government to prove knowledge of the statutory prohibition contained in § 922(g)."); *United States v. Kaspereit*, 994 F.3d 1202, 1208 (10th Cir. 2021) ("*Rehaif* does not require that Defendant knew his status prohibited his possession of a firearm, just that he knew of his status . . . ."); *United States v. Maez*, 960 F.3d 949, 954 (7th Cir. 2020) (same); *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020) (same); *United States v. Bryant*, 976 F.3d 165, 172–73 (2d Cir. 2020) (same); *United States v. Johnson*, 981 F.3d 1171, 1189 (11th Cir. 2020) (same).

[4] If Lundy is asserting that he did not know that he was prohibited from possessing a firearm, that would be a mistake of law that is not a defense. And, as we note above, that's not what *Rehaif* holds. But if Lundy thought he was genuinely using hemp, and not marijuana, he perhaps did not know his status as an unlawful user of controlled substances. *Rehaif* contemplated this situation

asserts that there was no evidence of his knowing use of marijuana after February 2016. But, like the district court, we reject that argument.

Here, the Government presented ample evidence from which the jury could conclude both that Lundy was a regular user of controlled substances and that he knew it. The Government put on evidence both of Lundy's history of marijuana use throughout his life and during the time he possessed firearms. The Government admitted clips of Lundy's testimony from a 2015 state court trial about using marijuana his entire adult life, testimony Lundy corroborated at trial. Lundy testified he smokes pounds of marijuana a year. The Government found more than 5,000 grams of marijuana at Lundy's residence, equipment for growing marijuana, and various drug paraphernalia. He admitted to a KSP officer that the marijuana at his residence was for personal use, and not for sale. Lundy even offered to smoke marijuana with the officer. Lundy testified to knowing which plants in his grow operation were "hot." And his hair and urine samples all came back positive for high levels of THC. All this evidence together was enough to show that Lundy knowingly used marijuana with regularity, over a long period of time, and at the same time as his possession of firearms. And considering the Government's overwhelming evidence, it strains credulity to believe Lundy's claim that he did not know he was using marijuana. *See Bowens*, 938 F.3d at 797 ("[I]t borders on fantastical to suggest that defendants were unaware they were smoking marijuana . . . ."). Thus, the district court properly denied Lundy's Rule 29 motion for judgment of acquittal.

---

by saying that the "mistake of law is no excuse" maxim does not apply when "a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." 139 S. Ct. at 2198 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(a), at 575 (1986)). Knowledge of status under 922(g) and 924(a)(2) falls into this category, which the Court called a "'collateral' question of law." *Id.*

Lundy alternatively submitted his Rule 29 motion for acquittal as a Rule 33 motion for a new trial. Our review of a motion for a new trial is for an abuse of discretion. *See id.* at 796. But Lundy used the same arguments in both his Rule 33 motion and his Rule 29 motion. The district court properly analyzed Lundy's arguments under the correct standards for both motions. After examining the Government's evidence, it is clear the district court's ruling was not an abuse of discretion. *See id.* (understanding the district court's denial of Rule 29 and 33 motions "for the same reasons" to mean the district court found the defendants' evidentiary arguments weak and therefore the weight of the evidence did not cut against the jury's verdict).

**B.**

We now turn to Lundy's challenge of the district court's refusal of his proposed jury instruction about his knowledge of his status. A district court's refusal to submit a requested instruction "is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

The district court instructed the jury that to convict Lundy of possession of a firearm by an unlawful user of marijuana under § 922(g)(2) and § 924(a)(2), it must find that the Government proved, beyond a reasonable doubt, that "the defendant knew he was an unlawful user of marijuana." (R. 66, Jury Instrs., PID 229.)[5] The district court defined an "unlawful user" of marijuana as someone who "was engaged in a pattern of regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed." (*Id.* at 230.)

---

[5] The district court instructed the jury to consider whether the Government had also met this burden of proof for the other elements of § 922(g)(3) but they are not at issue.

9

The court then explained the difference between marijuana and hemp and discussed how to infer a mental state. Part of this discussion included a statement that finding Lundy's deliberate ignorance that he was using marijuana was enough to find he knew he was using marijuana, but a finding of carelessness, negligence, or foolishness was not.

Lundy requested a different instruction as to § 922(g). One of the elements Lundy would have had the jury find proved by the Government beyond a reasonable doubt was that "[a]t the time of the possession [of a firearm], the defendant knew of his alleged prohibited status." (R. 56-1, Def.'s Supp. Jury Instr., PID 203.) Lundy's proposed instruction also would have included an element stating, "the defendant was a Prohibited Person." (*Id.*)

Lundy contends that the district court's refusal to submit his proposed jury instruction was error because *Rehaif* "required" jury instructions that found the defendant was aware of his prohibited status. (Appellant Br. at 21.) But it's not clear exactly what Lundy's dispute is with the instruction that the district court gave. If Lundy is contending that the jury had to be instructed that it needed to find that he knew he was an unlawful user of a controlled substance, the trial court's instruction did that. If Lundy is arguing that the Government needed to prove that he knew he was an unlawful user of drugs who was prohibited from possessing a firearm, that, as explained above, is an incorrect statement of the law.

Lundy cites *United States v. Conley*, 802 F. App'x 919 (6th Cir. 2020), which has no application here. The trial in that case occurred before *Rehaif*, so the jury received no instruction relating to the defendant's knowledge of his status. *See id.* at 921. And the Government conceded that such an omission conflicted with *Rehaif* and was a plain error. *Id.* at 923. That's not this case. Instead, the district court instructed the jury that the Government needed to prove that Lundy knew he was an unlawful user of marijuana. That instruction was a correct statement of law.

**C.**

Lundy next attacks § 922(g)(3) as being unconstitutionally vague. We review whether a statute is unconstitutionally vague de novo. *See Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016). A criminal law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). A law provides fair notice when it gives a "person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). For challenges to a statute that do not implicate the First Amendment, the defendant bears the burden of establishing the statute's vagueness as applied to his case; not just that the statute could be interpreted as vague in a hypothetical situation. *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012).

Lundy asserts that § 922(g)(3) is vague because the statute does not require proof of a temporal nexus between Lundy's alleged use of a controlled substance and his stipulated possession of a firearm. Lundy offers no support for why the statute is vague as applied to his case.[6] Instead, he provides a hypothetical of a person who possesses firearms in Kentucky, travels to Colorado to use marijuana, and then returns as a person prohibited from possessing firearms. Lundy argues that in a situation such as this, the lack of temporal nexus between unlawfully using a controlled substance while possessing a firearm encourages arbitrary enforcement.

---

[6] Lundy cites two cases he claims held that "the unlawful use of drugs must occur while the defendant is the possessor of a firearm." (Appellant Br. at 26.) But both cases say the opposite—the Government does not need to show that the defendant possessed the firearms at the "exact moment" that he was using or addicted to drugs. *United States v. McIntosh*, 23 F.3d 1454, 1458 (8th Cir. 1994); *United States v. Corona*, 849 F.2d 562, 567 (11th Cir. 1988), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1, 7 (1996). Instead, the Government must prove that the defendant was an unlawful user "during the time he possessed firearms." *McIntosh*, 23 F.3d at 1458.

Lundy bears the burden of proving that § 922(g)(3) is unconstitutionally vague as applied to his situation, not hypothetically. Lundy possessed, manufactured, and consumed marijuana contemporaneously with his firearm possession. Lundy had firearms near his grow operation and tested positive for marijuana just days after officers seized firearms and marijuana from his residence. The evidence also established that Lundy was a lifelong marijuana enthusiast, both before and during the time he possessed firearms. That pattern of behavior, combined with his knowledge of marijuana laws that he testified to at trial, put him on notice that he was an unlawful user of drugs under § 922(g)(3). We therefore find that the statute was not unconstitutionally vague as applied to Lundy. Although we have not previously decided this issue, other circuits have, and their analyses mirror ours.[7] The district court was therefore correct in declining to enter a judgment of acquittal based on the statute being void for vagueness.

**D.**

Finally, Lundy argues the district court erred in three aspects of his Sentencing Guidelines calculations: determining his base offense level, applying the enhancement for having eight to twenty-four firearms, and applying the enhancement for use of a firearm in connection with another felony offense. We review sentencing decisions for reasonableness, applying an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v.*

---

[7] *See United States v. Cook*, 970 F.3d 866, 874 (7th Cir. 2020) (finding that § 922(g)(3) was not unconstitutionally vague as applied to a defendant possessing a firearm who "engaged in the regular, non-prescribed use of a controlled substance."); *United States v. Augustin*, 376 F.3d 135, 138 (3d Cir. 2004) ("Congress intended the statute to cover unlawful drug use at or about the time of the possession of the firearm, with that drug use not remote in time or an isolated occurrence."); *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005) (finding that the defendant's regular use of marijuana would lead an ordinary person to understand defendant was an unlawful user of drugs while possessing a firearm); *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001) (holding that evidence the defendant smoked methamphetamine and marijuana contemporaneously with his possession of a firearm put him on notice he fell within the statutory definition of an "unlawful drug user.").

*Booker*, 543 U.S. 220, 261 (2005). We also give "due deference" to the district court's application of the Guidelines to specific facts. *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020). Our review of reasonableness looks at both procedural and substantive components. A sentence is procedurally unreasonable when the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, bases a sentence on clearly erroneous facts, or fails to adequately explain its chosen sentence. *Gall*, 552 U.S. at 51. Because Lundy's sentencing challenges all focus on the district court's Guidelines calculations, he raises only the issue of procedural reasonableness.

Lundy's base offense level was calculated as 14. *See* U.S.S.G. § 2K2.1(a)(6). Because the offense involved eight to twenty-four firearms, the court added a four-level enhancement. *See id.* § 2K2.1(b)(1)(B). The court added another four-level enhancement because Lundy possessed a firearm in connection with another felony offense, *see id.* § 2K2.1(b)(6)(B), bringing his adjusted offense level to twenty-two. Lundy's criminal history category was II, and when considered with the offense level, the presentence report determined the Guideline imprisonment range to be 46 to 57 months imprisonment. The district court accepted the range and sentenced Lundy to 46 months, the lowest end of the range.

*Base Offense Level*. Lundy argues his sentence is procedurally unreasonable because the district court improperly calculated his base offense level. Lundy believes his base offense level should have been calculated using U.S.S.G. § 2K2.1(b)(2), which states that a defendant who "possessed all ammunition and firearms solely for lawful sporting purposes or collection" and did not otherwise unlawfully use the firearms should have his base offense decreased to level six.

Whether Lundy used all his firearms and ammunition solely for sporting purposes is a question of fact that we review for clear error. *See United States v. Morrison*, 983 F.2d 730, 732

13

(6th Cir. 1993). Lundy bears the burden of proving, by a preponderance of the evidence, that all his firearms and ammunition were used solely for sporting purposes. *See id*. at 732–33. To determine whether the use was for "lawful sporting purposes or collection," the relevant circumstances include "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." U.S.S.G. § 2K2.1 cmt. n.6.

The Government offered evidence at trial to the location of some of Lundy's firearms. Although some were locked in a safe, a loaded rifle was located by the door and a loaded pistol in the nightstand. Lundy testified that he wouldn't recommend hunting with the nine-millimeter Hi-Point, located in the nightstand, and that it was for "self-protection." (R. 102, Tr. Vol. 5, PID 1170, 1190.) Lundy also had a previous conviction of carrying a concealed deadly weapon from 2003.

Our court applies a narrow reading of "solely" in § 2K2.1(b)(2). *See United States v. Clingan*, 254 F.3d 624, 626 (6th Cir. 2001). The district court considered the location of the weapons, their proximity to the marijuana grow operation, Lundy's criminal history, and relevant caselaw. The court acknowledged that most of Lundy's weapons were used for hunting and that he was an avid hunter. But the location of the loaded weapons did not suggest hunting, and only "the most negligent of target shooters would keep legitimate sporting firearms loaded in the home." *United States v. Shell*, 972 F.2d 548, 553 (5th Cir. 1992). We have held that a defendant did not possess firearms "solely" for sporting purposes when the Government presented evidence that just one of his guns was used for self-protection purposes. *United States v. Kaplan*, No. 93-1033, 1994 WL 12313, at *3–4 (6th Cir. Jan. 18, 1994) (per curiam). So the district court's finding that Lundy

14

did not meet his burden in proving his firearms and ammunitions were solely for sporting purposes was not clear error.

*Number of Firearms Enhancement*. The Guidelines provide that offenses involving three or more firearms have sentencing-level increases depending on the number of firearms present. For offenses involving eight to twenty-four firearms, the increase is four levels. U.S.S.G. § 2K2.1(b)(1)(B). At sentencing, Lundy argued the "lawful sporting purposes" reduction in § 2K2.1(b)(2)'s provision supersedes the enhancement in § 2K2.1(b)(1)(B). Simply put, if his firearms were all used for sporting purposes, Lundy would not have possessed eight to twenty-four firearms as a matter of fact. But because the district court had overruled Lundy's objection about the sporting use exception when calculating his base offense level, it decided, and Lundy agreed, that this objection could not succeed either.

On appeal, Lundy makes the same argument of the sporting use exception superseding the § 2K2.1(b)(1)(B) enhancement. He offers no authority as support for why the district court was wrong in its determination or why we should reverse its decision. So he has failed to develop his claim with argumentation or analysis and has thus forfeited the issue. *See United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (quoting *Popovich v. Cuyahoga Cnty. Court of Common Pleas*, 276 F.3d 808, 823 (6th Cir. 2002)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In any event, Lundy runs into the sporting use exception problem again. Because we have already decided the district court's determination was not erroneous, Lundy's superseding provisions argument is also irrelevant here. The district court therefore did not err in ruling against Lundy's objections and holding him responsible for sixteen firearms.

*Firearm in Connection with a Felony Enhancement*. The Guidelines provide that the base offense should be increased by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The Government must prove a nexus between the firearms and the other felony offense. *United States v. Ennega*, 263 F.3d 499, 503 (6th Cir. 2001). In interpreting the phrase "in connection with," we have concluded that a sufficient connection is established when it reasonably appears that firearms on the premises are used to protect drugs. *Id.*

Lundy argues that if the other felony offense that counts for the enhancement was manufacturing a controlled substance, the Commentary in the Guidelines limited the enhancement to apply only to drug-trafficking offenses. The relevant commentary provides that "Subsections (b)(6)(B) and (c)(1) apply . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G.§ 2K2.1 cmt. n.14(b). Nowhere in the Commentary does it say that drug trafficking is the only drug offense that applies, just that Subsection (b)(6)(B) does apply to that offense specifically when firearms are in close proximity. The district court was not persuaded that the Commentary limited other drug felonies to only drug trafficking. The court also noted that in the Definitions section, the Commentary provides that for Subsection (b)(6)(B) "another felony offense . . . means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought*, or a conviction obtained." *Id.* § 2K2.1 cmt. n.14(B) (emphasis added). The court reasoned that even though Lundy was not charged with manufacturing of hemp without a license, he admitted doing so. This was unlawful, *see* Ky. Rev. Stat. Ann. § 260.858, and met the terms of Subsection (b)(6)(B). Because either the marijuana manufacturing or the

hemp manufacturing charges could qualify, the district court properly applied the four-level enhancement for possessing his firearms in connection with another felony offense.

\* \* \*

For these reasons, we AFFIRM the judgment of the district court.